**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-60319
Summary Calendar

VICTOR GARCIA LIZAMA,

Petitioner,

VERSUS

UNITED STATES PAROLE COMMISSION,

Respondent.

Appeal from the Determination of the
United States Parole Commission

April 2, 2001

Before EMILIO M. GARZA, STEWART and PARKER, Circuit Judges.
ROBERT M. PARKER, Circuit Judge:

Petitioner Victor Lizama is a federal prisoner who was transferred to the United States from Mexico to continue serving a Mexican sentence for "Simple Homicide." The United States Parole Commission ("Commission") determined a release date for petitioner pursuant to 18 U.S.C. § 4106A(b)(1)(A). Petitioner appeals the Commission's determination that the federal offense most analogous

1

to Lizama's Mexican crime was second-degree murder.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Lizama, a United States citizen, killed Jose Martin Rios Hernandez in La Paz, Baja California, Mexico, on November 28, 1996. According to the Mexican court documents, available to the Commission in English translation, the following facts were proven at trial:

> ...the autopsy, [wherein] the injuries to the body are described, stating that JOSE MARTIN RIOS HERNANDEZ, died due to the described injuries and the autopsy which determines the cause of death was CRANIAL TRAUMATISM.  It is also determined that said injury was produced by a contusive object or agent; . . . .  With said documents, it was undoubtably [sic] proven that on November 28, 1996, at approximately ten thirty hours, there was a problem between C. VERONICA SANCHEZ MOLINA and the defendant/appellant.  Therefore the latter began chasing her in order to harm her; she asked for help and the deceased JOSE MARTIN RIOS HERNANDEZ came and who after telling VICTOR LIZAMA to leave VERONICA alone because she 'had a belly' [was pregnant], hit him over the head with a 'ballena' bottle, causing him to bleed and began running in order to separate himself [Hernandez] from the defendant but was unable to.  VICTOR LIZAMA caught up with him and beat him, causing injuries which finally led to his death, therefore the HOMICIDE was due to the assault he suffered by the deceased.  When he [Lizama] beat the deceased to death, the latter was intoxicated, which implies he is a danger to society and because of this, is even more dangerous, justifying then, that the sentencing judged the same as aggravated due to material and moral implications of it, considering VICTOR LIZAMA as an adult criminal, who used his own hands to commit the crime of SIMPLE INTENTIONAL HOMICIDE.

Lizama was arrested at the scene and detained by Mexican authorities.  He was convicted by a Mexican court on the charge of Simple Homicide on May 26, 1998 and sentenced to 14 years'

2

imprisonment. Lizama transferred to the United States to serve his sentence, pursuant to a prisoner-exchange treaty between the United States and Mexico. *See* Treaty on Execution of Penal Sentences, Nov. 25, 1976, U.S.-Mex., 28 U.S.T. 7399. The Commission determined a release date for Lizama, pursuant to 18 U.S.C. § 4106A (2000), based on the sentencing guidelines "of a similar offense." § 4106A(b)(1)(A). The U.S. probation officer who prepared Lizama's post-sentence report found that the most analogous federal offense was voluntary manslaughter, 18 U.S.C. § 1112(a). After holding a hearing, a Commission examiner adopted the probation officer's recommendation, and recommended that Lizama be released after 51 months.

A Commission case reviewer did not agree with the voluntary manslaughter determination, and a rehearing was ordered. A different examiner initially agreed with the voluntary manslaughter determination, but later changed her mind and recommended that the most analogous offense was second-degree murder. 18 U.S.C. § 1111(a). The Commission adopted this recommendation, determined that the guideline range was 168-210 months, and sentenced Lizama to serve 168 months in prison, followed by 60 months or until the full term date of his foreign sentence, whichever is earlier, on supervised release.

## DISCUSSION

Lizama argues on appeal that voluntary manslaughter is the

federal offense most analogous to his Mexican crime rather than second-degree murder as the Commission found.

## A. Standard of Review

We decide an appeal of the Commissions's determination, in accordance with 18 U.S.C. § 3742, as though the determination appealed had been a sentence imposed by a United States district court.  18 U.S.C. § 4106A(b)(2)(B).  Accordingly, we review the Commission's legal determinations *de novo*.  *Molano-Garza v. U.S. Parole Commission*, 965 F.2d 20, 23 (5th Cir. 1992).  When reviewing the Commission's factual findings, we apply the clearly erroneous standard.  *Id.*

## B. Commission's Similar Offense Determination

In determining a release date for a transfer offender, the Commission considers the recommendations of the U.S. Probation Service and any documents from the transferring country.  18 U.S.C. § 4106A(b)(1)(B).  The regulations also provide that "[t]he Commission shall take into account the offense definition under foreign law, the length of the sentence permitted by that law, and the underlying circumstances of the offense behavior." 28 C.F.R. § 2.68(g)(1999).

Homicide under Article 123 of the Baja Penal Code states, "Whomever deprives another of his life commits the crime of homicide." The Baja statute establishes three ranges of punishment for homicide, depending on the defendant's mens rea and the

4

circumstances surrounding the crime: Willful Homicide ("*Homicidio Calificado*") – 16-30 years' imprisonment; Simple Homicide ("*Homicidio Simple*") - 8-15 years' imprisonment; and Homicide in an Affray ("*Homicidio en Rina*") - 4-10 years' imprisonment. Article 147 defines the most serious homicide, Willful Homicide, as follows: "It is understood that assault and homicide are willful when they are committed with premeditation, with superior advantage, with malice[1] or treachery." Article 146 defines affray for purposes of the least serious homicide provision as follows: "a physical, not verbal dispute between two or more persons, with the purpose of causing one another mutual harm." Simple Homicide appears to be the default statute applied if the crime does not fall into either the more or less serious provisions.

In sentencing Lizama, the Mexican court rejected both the prosecutor's claim that Lizama had committed willful homicide and Lizama's claims that he was responsible only for Homicide in an Affray and that he acted in self-defense. The court found that, Lizama's "behavior can in no way be judged defensive." The court also declined to find that Lizama had committed Homicide in an Affray, because "[t]here was then no intention between the parties

---

[1]The term "malice" has a different meaning under the Baja Penal Code, than in United States jurisprudence. *Kleeman v. U.S. Parole Comm'n*, 125 F.3d 725, 731 n.7 (9th Cir. 1997). A discussion of malice by the Mexican courts is not dispositive of whether Lizama acted with the requisite malice to classify his crime as second degree murder in the United States. *Id.*

to cause each other harm, so there is never the typical behavior of a fight." The Mexican court therefore concluded that Lizama was guilty of Simple Homicide and sentenced him to 15 years' imprisonment.

The Commission found that the United States federal offense most analogous to Lizama's Mexican crime of Simple Homicide was second-degree murder, in violation of 18 U.S.C. § 1111(a):

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of , or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
> Any other murder is murder in the second degree.

Lizama argues that the Commission erred because voluntary manslaughter is more analogous than second degree murder to Simple Homicide under the circumstances of his case. Voluntary manslaughter is defined in 18 U.S.C. § 1112(a) as:

> the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion.

Specifically, Lizama contends that he killed in a "heat of passion" induced by Hernandez's blow to the back of his head, which negates the existence of malice, an essential element of second degree murder. A defendant who kills in a heat of passion in response to adequate provocation is guilty only of voluntary manslaughter. *United States v. Browner*, 889 F.2d 549, 552 (5th

6

Cir. 1989). A "heat of passion" is a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force. *Id.* However, a blow will not reduce a homicide to voluntary manslaughter when the defendant "by his own prior conduct (as by vigorously starting the fracas) was responsible for that violent blow." WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.10(b)(1)(1986).

Lizama contends that he was not responsible for the blow he received because he had not yet assaulted Hernandez when Hernandez hit him on the back of the head with a large beer bottle. The Mexican court documents belie this position, finding that Hernandez struck Lizama "because as any citizen, he was defending a woman who at that time was being assaulted by the sentenced defendant and because of this, the deceased hit him . . . and [then] the deceased ran." The Commission, giving due deference to the Mexican court's finding, rejected Lizama's position and found that Hernandez struck Lizama in order to defend Molina, whom Lizama was "chasing and threatening." "The examiner does not find that [Lizama] had adequate provocation for . . . the assault on the victim. [Lizama's] own actions in chasing and threatening Ms. Molina caused the victim to intercede on her behalf." Lizama's version of the events, which would require the Commission to contradict the

7

Mexican court's conclusions, were properly rejected by the examiner.

We find no error in the factual basis of the Commission's decision and or in the ultimate determination that second degree murder is the crime most analogous to Simple Homicide under the Baja penal code and the particular facts of this offense. We therefore affirm the Commission's ruling.

AFFIRMED.