# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 18, 2013

No. 12-50052

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ARMANDO SAUSEDA, SR., FRANCISCO M. SAUSEDA,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 7:09-CR-252-1

Before REAVLEY, JOLLY, and SMITH, Circuit Judges.

PER CURIAM:[*]

After discharging firearms at a vehicle in Midland, Texas, causing the deaths of two people, Armando Sauseda, Sr. and his brother Francisco Sauseda were charged in a multi-count indictment, first, for conspiracy to possess, with intent to distribute, five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and, second, for aiding and abetting each other in the use of firearms to commit first-degree murder (as defined by 18 U.S.C. § 1111(a)), in violation of 18 U.S.C. §§ 924(c)(1), 924(j), and 2.  After a jury

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50052

trial, each defendant was found guilty on both counts. Armando and Francisco Sauseda each filed a timely appeal, alleging the court below committed various errors. We AFFIRM.

I.

On May 31, 2009, Armando Sauseda ("Armando") was at a party in Midland, Texas with Jose "Chico" Urquidi Gardea ("Gardea"), a "main boss" in the Midland-Odessa drug trade and Steven Lee Soto ("Soto"), Gardea's deputy. At the party, an argument broke out between Armando and Soto. The next day, Armando received a phone call and, in the background, he could hear Soto saying, "I'm going to come pistol-whip you and kill you with your own gun." Armando and his brother Francisco Sauseda ("Francisco") felt threatened in the wake of the phone call and armed themselves, believing Soto and Gardea were coming to confront them. There was no discussion of a plan to kill Soto and Gardea and one witness, who was with the two defendants at the time, testified that he believed "nothing was going to happen." Nonetheless, Francisco and Armando positioned themselves outside, waited for Gardea and Soto, and, when, Gardea's Jeep arrived, they opened fire on the two. The shooting lasted for a brief time, and then Armando walked up to the hood of the Jeep and shot Soto in a *coup de gras*. Following the fusillade, both Armando and Francisco were arrested. They both admitted to firing at the Jeep. The jury convicted both Armando and Francisco of first-degree federal murder and conspiracy to possess, with intent to distribute, cocaine. They were sentenced to life imprisonment. On this appeal, Armando and Francisco's claims, broadly speaking, involve (1) the sufficiency of the evidence at trial, (2) jury instructions, (3) prosecutorial misconduct, (4) evidentiary admissions, and (5) sentencing. We briefly address these five categories.

No. 12-50052

II.

First, Armando and Francisco argue that there was insufficient evidence to support their respective convictions. Armando argues that the evidence at trial was insufficient to sustain a conviction for first or second-degree murder, saying at most it could support a conviction of voluntary manslaughter, because there was no evidence of premeditation or malice. This claim fails. Taking the facts in the light most favorable to the jury verdict, a rational juror could have found premeditation from the following sequence: (1) upon hearing the Jeep was coming down the alley behind his house, Armando reflected for an (admittedly very) brief amount of time, (2) picked up his gun and (3) decided to fire at the Jeep. *See United States v. Shaw*, 701 F.2d 367, 393 (5th Cir. 1983) (noting that, for premeditation, "[t]here must be some appreciable time for reflection . . . before execution of the act, although the period of time does not require the lapse of days or hours *or even minutes*.") (inset quotation marks omitted) (emphasis added) ; *see also* Matthew A. Pauley, *Murder by Premeditation*, 36 Am. Crim. L. Rev. 145, 151 (1999) (noting that, under one approach to premeditation, "time is irrelevant. . . . The defendant can premeditate in a very short time – in an instant, in fact."). Armando's actions were also "malicious" because the shots were fired with the intent to do harm. *See Shaw*, 701 F.2d at 392 n.20 (stating that malice to support a first-degree murder conviction may be shown by an "inten[t] to shoot at [a] passing car with a heart without regard for the life and safety of others") (inset quotation marks omitted). We conclude the evidence was sufficient for a jury to convict Armando for first-degree murder.

Francisco also makes a sufficiency claim, but his is separate and distinct from Armando's. Francisco argues, first, that he could not be convicted under 18 U.S.C. § 924 because there was no showing that he used a firearm "during

3

No. 12-50052

and in furtherance of a drug trafficking crime"[1] and, second, that he could not be convicted under 21 U.S.C. § 846 because there was insufficient evidence of his participation in a drug conspiracy. These claims fail because, per the literal terms of the first statute, Francisco "possessed" a firearm "in furtherance" of a drug trafficking crime – namely, the unlawful shooting of Gardea and Soto, who the evidence shows were rival drug dealers. *See* 18 U.S.C. § 924(c)(1). There was also evidence sufficient for a jury to find that Francisco was a member of a drug conspiracy under § 846. Maria Espinoza testified that Francisco stored cocaine for Armando, and Armando's son testified that there were assault rifles in Francisco's room. From these two items of evidence, one may infer the existence of an agreement between Francisco and Armando as well as Francisco's voluntary participation as a drug "storer" and "gunman" in some drug trafficking activities. *See United States v. Espinoza-Seanez*, 862 F.2d 526, 537 (5th Cir. 1988) (stating that the existence of a conspiracy may be inferred from circumstantial evidence); *see also United States v. Tolliver*, 61 F.3d 1189, 1195 (5th Cir. 1995), *vacated on other grounds*, 519 U.S. 802 (1996), *remanded to* 116 F.3d 120 (5th Cir. 1997) (stating that participatory positions in a drug conspiracy include "gunman" and drug "storer").

Second, Armando and Francisco argue that the district court erred in denying a jury instruction on voluntary manslaughter. The court did not abuse its discretion. "As a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63

---

[1] The text of Section 924 reads: "[A]ny person who, during and in relation to any crime of violence or drug trafficking crime[,] . . . uses or carries a firearm or who, in furtherance of any such crime, *possesses* a firearm, shall . . . be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A)(i) (emphasis added). "A person who in the course of a violation of [924](c), causes the death of a person through use of a firearm, shall . . . be punished by death or imprisonment for any term of years or for life." § 924(j).

4

No. 12-50052

(1988). The court may, however, refuse to give a requested instruction that lacks sufficient foundation in the evidence. *United States v. Tannehill*, 49 F.3d 1049, 1057 (5th Cir. 1995) (inset quotation marks omitted). Under 18 U.S.C. § 1112(a), voluntary manslaughter is an unlawful killing without malice upon a sudden quarrel or heat of passion. Here, there is no evidence that the Sausedas flew into a fit of rage that impaired their mental capacity. Although there was indeed a "quarrel" between Soto and Armando at the party, the shootings did not follow "suddenly" from that quarrel. They occurred the next day. And while it may be true that Armando and Francisco acted "suddenly" in grabbing their guns and opening fire on the Jeep, they did so not in a "heat of passion" but rather as means of anticipatory self-defense[2] – which is not part of the federal definition of voluntary manslaughter, *see* 18 U.S.C. § 1112(a) – and in fulfillment of an inchoate plan to ambush.

Third, Armando argues that certain trial statements made by the prosecutor – ones obliquely referencing narcoviolence committed by drug cartels in Ciudad Juarez, Mexico – constituted prosecutorial misconduct.[3] Armando

---

[2] Additionally, Francisco argues that the trial court erred in submitting a self-defense instruction that placed the burden of proof on the defendants. Francisco cites no authorities for his position and therefore has waived this argument. FED. R. APP. P. 28(a)(9)(A); *L & A Contracting v. So. Concrete Servs.*, 17 F.3d 106, 113 (5th Cir. 1994). However, we note it because it brings up an important fact: Despite their best attempts at re-characterization, the defendants' case, at bottom, is really based on a theory of anticipatory self-defense– that they were frightened for their lives and opened fire on the Jeep to protect themselves. The district court expressly considered this theory and instructed the jury that it must find the Sausedas not guilty if their actions were justified by self-defense or the defense of others. Thus, at trial, the jury was made aware of its ability to consider self-defense but decided to convict notwithstanding.

[3] In particular, Armando points to three statements during closing argument and final rebuttal: in the first, the prosecutor stated that "Odessa, Texas is not [Ciudad] Juarez, ladies and gentlemen. What is our principles of law and morality are not the principles of our brothers and sisters right now in certain parts of Mexico. But this notion of 'I'm going to get him before he gets me['] . . . that may be the law in Juarez . . . [but] it does not justify what happened here." In the second statement, the prosecutor asked, "Do you want our community to be Juarez, or do you want it to be Odessa, Texas?" While posing this question, the

5

argues that the only possible reason for these statements was to inflame the jurors' passions by insinuating that the problems plaguing Juarez would creep into Midland absent the jury's decision to "send a message." Armando's argument fails. First, he does not contest his failure to object to the prosecutor's statements during closing arguments. Therefore, we limit our review to whether the court committed plain error, *see* FED. R. CRIM. P. 52(b), and ask whether the Juarez statements "seriously affected the fairness, integrity, or public reputation of the judicial proceeding and resulted in a miscarriage of justice." *United States v. Pierre*, 958 F.2d 1304, 1312 (5th Cir. 1992) (en banc) (internal quotation marks omitted). Armando has not shown how his substantial rights were affected by the prosecutor's references to Juarez, so, even if the statements were wrongful, they do not rise to the level of plain error.

Fourth, Francisco argues that the district court erred in admitting into evidence his video-taped confession and prior cocaine dealing and in refusing to admit a defense expert's testimony regarding a *narcocorrido* drug ballad. These claims are meritless. First, although Francisco claims his confession was involuntarily rendered, pointing to a psychologist's report that characterized him as mildly mentally retarded, and alleges "subtle psychological coercion" on the part of the police officers who took his post-arrest statement, he has not shown the presence of "police overreaching," the crucial element in a voluntariness analysis. *See Colorado v. Connelly*, 479 U.S. 157, 163 (1986). Moreover, federal courts generally reject claims that *Miranda* waivers are involuntary based upon a defendant's low mental functions, below-average I.Q., or illiteracy, *see United*

---

prosecutor displayed a photograph depicting one of the bloodied, bullet-hole ridden victims. Finally, the prosecutor stated in his final rebuttal: "Most of what you heard just now from Mr. Rogers [the lawyer for the defense] was possibly a perfect encapsulation of the logic of Juarez . . . the world of these defendants [is that world] where you've got to do what you've got to do, who cares about cops . . . [?]".

No. 12-50052

*States v. DeCoteau*, 602 F. Supp. 2d 1120, 1130 (D.N.D. 2009) (collecting cases), and we have held the same. *See Bell v. Lynaugh*, 828 F.2d 1085, 1092 (5th Cir. 1987) (holding the confession of a defendant, who was "borderline retarded" was not involuntary, absent a showing of police coercion). Thus, the district court did not err in admitting Francisco's confession.

Next, Francisco argues that the district court's admission of testimony regarding a 2006 cocaine transaction violates Federal Rule of Evidence 403.[4] Here, the trial court did not abuse its discretion in admitting the testimony regarding Francisco's 2006 cocaine dealing because the testimony was admissible under FED. R. EVID. 404(b)(2), as it was relevant to Francisco's intent to and knowledge of entering into a conspiracy to distribute cocaine, and Francisco has not explained any particular way in which the admission was inappropriately prejudicial under Rule 403.

In his third evidentiary claim, Francisco argues that the district court erred in excluding the "expert" testimony of Gerald Lopez. The Defense called Lopez, a criminal defense attorney, who represents Latino musicians and *norteño* radio stations, to testify regarding songs called *narcocorridos*. The district court did not abuse its discretion by excluding the Lopez *corrido* testimony. First, the testimony does not satisfy the *Daubert*[5] factors regarding the admissibility of expert testimony. *See United States v. Fields*, 483 F.3d 313, 342 n.24 (5th Cir. 2007) (listing the *Daubert* factors). Furthermore, the evidence is speculative, as Lopez acknowledged that the composer and basis for the song were unknown, and likely hearsay under Federal Rule of Evidence 801(c).

---

[4] FED. R. EVID. 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."

[5] *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

No. 12-50052

Lastly, Francisco alleges that the lower court committed errors at sentencing. He makes four specific allegations: that the trial court erred in (1) calculating the drug amount attributable to him for the purposes of the conspiracy conviction, (2) failing to grant his request for a minor role sentencing guideline reduction, (3) failing to grant a downward departure based on diminished capacity as shown by his low I.Q., and (4) awarding Francisco two additional criminal history category points for contempt of court. All four objections are meritless.

Given that there was sufficient evidence to convict Francisco of conspiracy, see discussion *supra*, and that he has not met his burden of introducing rebuttal evidence demonstrating information in the PSR is inaccurate, *see United States v. Scher*, 601 F.3d 408, 413 (5th Cir. 2010) (citation omitted), there was no clear error in the pre-sentence report's ("PSR") drug calculation. There was also no clear error in the court's finding that Francisco was not a minor participant in the shooting of Gardea and Soto. Although it is true that Francisco fired fewer bullets than Armando, this does not necessarily decrease culpability. As the court said at sentencing, Francisco was not substantially less culpable than the other participants in the shooting; the reason was because "[h]e took up a gun. He took up a hiding place. He took place – took part in the ambush of the two victims. He fired rounds. He would have fired more if his gun hadn't jammed."

As for Francisco's request for a downward departure for diminished capacity under U.S.S.G. § 5K2.13, this court has no jurisdiction to review the district court's denial of such request unless the "district court held a mistaken belief that the Guidelines do not give it authority to depart." *United States v. Lucas*, 515 F.3d 316, 350 (5th Cir. 2008). Francisco produces no evidence that the court was unaware of its authority and apparently concedes that the failure to grant a downward departure is unreviewable. In short, therefore, we lack jurisdiction on this sentencing objection. Finally, Section 4A1.1 of the

No. 12-50052

Sentencing Guidelines, which specifies how a defendant's prior criminal history is used to determine his "Criminal History Category," provides that two criminal history points are to be added for each "prior sentence of imprisonment of at least sixty days," U.S.S.G. § 4A1.1(b), and sentences of imprisonment for "contempt of court" and "non-support" qualify as such prior sentences. *Id.* § 4A1.2(c)(1). The PSR showed that in 2006, Francisco served a 180-day sentence for failure to pay child support, which qualified him for the two-point assessment under the guidelines. There was no error.

## III.

For the foregoing reasons, we find no error committed by the trial court. Armando and Francisco Sauseda's convictions and sentences for first-degree federal murder and conspiracy to possess, with intent to distribute, cocaine are in all respects

AFFIRMED.