**REVISED June 8, 2017**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60235

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2017

Lyle W. Cayce
Clerk

ROBERT FRASCARELLI,

Petitioner

v.

UNITED STATES PAROLE COMMISSION,

Respondent

Appeal from a Determination of the
United States Parole Commission

Before SMITH, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Robert Frascarelli is a federal prisoner who was transferred to the United States from Mexico to continue serving a Mexican sentence for "qualified homicide committed with advantage."  Pursuant to 18 U.S.C. § 4106A(b)(1)(A), the United States Parole Commission (the "Commission") determined that the federal offense most analogous to Frascarelli's crime was second-degree murder and analyzed his release date accordingly.  Frascarelli now appeals that determination.  We affirm.

No. 16-60235

I.

Robert Frascarelli is an American citizen who killed his live-in girlfriend, Kajia Helena Kauppinen-Conway ("Conway"), in Tijuana, Mexico on November 22, 2009. Their brief relationship appears to have been rocky from the start, involving allegations of drug use, theft, and incessant fighting.

After Frascarelli killed Conway, he contacted Mexican authorities. Upon arrival, they found Conway's body with adhesive tape on her head and her ankles tied together. Frascarelli explained the scene by lying to law enforcement, telling them that armed and masked intruders arrived at Conway's house, threatened both of them, tied her up and killed her. The police inspected the crime scene and noted that there were no signs of forced entry. When the police questioned Frascarelli about how the masked men had entered, he became visibly nervous and admitted that the doors were locked at the time of the alleged break-in. The police also questioned him about how he was capable of speaking to the masked men because he had earlier reported that his mouth had been taped shut.

Frascarelli eventually confessed to killing Conway. Specifically, Frascarelli confessed that he was fed up with Conway because she had treated him badly. He described that before he killed her, they had argued over forty dollars. The argument angered Frascarelli, causing him to descend the stairs from her room on the second floor, take a hammer from a toolbox, climb back up the stairs, and hit her in the face with the hammer "three or four times." When she then "fell unconscious[,] . . . [he] strangled her with [his] hands until

2

she could not breathe." The autopsy report concluded that the cause of death was strangulation.

Mexican authorities convicted Frascarelli of having committed qualified homicide with advantage, as proscribed by Articles 123, 126, and 148 of the Baja California State Penal Code ("Baja Penal Code"). The elements of the offense under the Baja Penal Code are (a) the pre-existence of a life, (b) the deprivation of that life (c) caused by delinquent conduct carried out by a party, and (d) committed with advantage. *See* BAJA PENAL CODE ARTS. 123, 126, 147, 148. The Mexican appellate court found that Frascarelli's statement that he killed Conway was reliable and voluntary, as it was given in the public prosecutor's office in the presence of the official public defender. The court also decided that the confession was corroborated and supported by witness testimony. The court therefore concluded that Frascarelli committed the act with advantage over Conway because she was unarmed and had fallen before he strangled her.

Pursuant to a treaty between the United States and Mexico, Frascarelli requested a transfer to serve his term of imprisonment in the United States. *See Molano-Garza v. U.S. Parole Comm'n*, 965 F.2d 20, 22 (5th Cir. 1992) (citing Treaty on Executions of Penal Sentences, Nov. 25, 1976, U.S.-Mex., 28 U.S.T. 7399, T.I.A.S. No. 8718). In accordance with the transfer proceedings, a probation officer prepared a postsentence investigation report ("PSR"). The PSR recommended to the Parole Commission that the most analogous offense to Frascarelli's Mexican conviction of qualified homicide committed with advantage was second-degree murder, under 18 U.S.C. § 1111(b). In preparation for the transfer-treaty hearing, a Parole Commission Examiner reviewed the PSR and prepared a prehearing assessment.

No. 16-60235

The Parole Commission subsequently held a hearing before an examiner to determine Frascarelli's release date.  At the hearing, Frascarelli recounted a third version of events leading to Conway's death.  He testified that, on the day of the killing, he and Conway had been arguing, and she demanded that he purchase more vodka for her.  When he refused, the argument escalated from a verbal dispute to a physical altercation with Conway exploding in fury and lunging toward him with a pair of rusty scissors.  Frascarelli also stated that he tried to disarm Conway and hit her in the ribs, causing her to fall down a spiral staircase and die.  Just as the police recognized Frascarelli's initial fabrication, the examiner noticed inconsistencies in Frascarelli's new version of events.  For example, contrary to the field crime report, Frascarelli asserted that Conway's body was at the bottom of the stairs when the police arrived.

The examiner determined that the description of the crime in the Mexican field crime report was more consistent with the official version in the PSR than the version Frascarelli provided at the hearing.  She also found that the official Mexican documents were more credible than Frascarelli's new story about Conway falling down the stairs.  Based on these conclusions, the examiner recommended that the most analogous federal offense to the Mexican conviction was second-degree murder.  She found that Frascarelli acted with malice by both stepping away from the argument to obtain a hammer he then used to hit Conway and by proceeding to strangle her and tie her up in order to support a fabricated story that he told the police. The Commission adopted the examiner's recommendation.  Frascarelli appeals that determination.

II.

The Commission had jurisdiction to determine Frascarelli's release date under 18 U.S.C. § 4106A(b)(1)(A), which states, "[t]he United States Parole

4

No. 16-60235

Commission shall . . . determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense."

We have jurisdiction under 18 U.S.C. § 4106A(b)(2)(A), which allows for direct appeals "to the . . . court of appeals for the circuit in which the offender is imprisoned" if the notice of appeal is filed "not later than 45 days after receipt of" the Commission's notice of determination. Because Frascarelli was incarcerated at FCI La Tuna, located in Anthony, Texas, when the Commission made its determination, and because Frascarelli received notice of the Commission's determination on April 1, 2016 and filed his appeal from the determination on April 15, 2016, we have jurisdiction to hear this appeal.

"[We] exercise[] review over a Transfer Treaty prisoner's sentence as [we] would over that of an ordinary federal prisoner sentenced in district court." *Bender v. U.S. Parole Comm'n*, 802 F.3d 690, 693 (5th Cir.), *cert. denied*, 136 S. Ct. 493 (2015) (citing § 4106A(b)(2)(A); *Molano–Garza,* 965 F.2d at 23). "The Parole Commission's construction of statutory law and the Sentencing Guidelines is reviewed de novo[,] and its factual findings are reviewed for clear error." *Id.* (citing *Molano–Garza,* 965 F.2d at 23); *see also Navarrete v. U.S. Parole Comm'n*, 34 F.3d 316, 318 (5th Cir. 1994). "We will reverse under the clearly erroneous standard 'only if we have a definite and firm conviction that a mistake has been committed.'" *In re Dall. Roadster, Ltd.*, 846 F.3d 112, 127 (5th Cir. 2017) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000)).

No. 16-60235

III.

"In determining a release date for a transfer offender, the Commission considers the recommendations of the U.S. Probation Service and any documents from the transferring country." *Lizama v. U.S. Parole Comm'n*, 245 F.3d 503, 505 (5th Cir. 2001) (citing § 4106A(b)(1)(B)).　The Commission determines

> [t]he applicable offense guideline provision . . . by selecting the offense in the U.S. Code that is most similar to the offense for which the transferee was convicted in the foreign court.　In so doing, the Commission considers itself required by law and treaty to respect the offense definitions contained in the foreign criminal code under which the prisoner was convicted, as well as the official documents supplied by the foreign court.

28 C.F.R. § 2.68(a)(4); *see also Lizama*, 245 F.3d at 506–07.

The analysis may involve more than simply comparing the offense definitions.　"[T]he Commission shall take into account the offense definition under foreign law . . . and the underlying circumstances of the offense behavior." *Lizama*, 245 F.3d at 505 (quoting 28 C.F.R. § 2.68(g)); *see also Kleeman v. U.S. Parole Comm'n*, 125 F.3d 725, 732 n.9 (9th Cir. 1997). "Disputes of material fact shall be resolved by a preponderance of the evidence . . . ." 28 C.F.R. § 2.68(h)(5).　The Commission does not re-sentence the transferee, nor does it revisit questions of guilt or innocence; instead, it simply converts the foreign sentence into a determination of release date and a period and conditions of supervised release.　*See Molano-Garza*, 965 F.2d at 22.　Here, the Commission was tasked with converting a Mexican conviction under Article 123 of the Baja Penal Code into a parallel conviction under the laws of the United States.

Under the Baja Penal Code, "'[w]homever deprives another of his life

6

commits the crime of homicide.'" *Lizama*, 245 F.3d at 505 (quoting BAJA PENAL CODE ART. 123). The Code establishes three ranges of punishment for homicide. *Id.* Qualified homicide is defined as a killing committed with premeditation, advantage,[1] malice,[2] or treachery. *Id.* (quoting BAJA PENAL CODE ART. 147).

By comparison, second-degree murder under U.S. law requires a finding that a human being was killed "with malice aforethought." 18 U.S.C. § 1111(a). "Malice" is a term of art that encompasses three mental states: "(1) intent to kill; (2) intent to do serious bodily injury; and (3) the existence of a 'depraved heart,' another term of art that refers to a level of extreme recklessness and wanton disregard for human life." *United States v. Browner*, 889 F.2d 549, 551–52 (5th Cir. 1989). Voluntary manslaughter is defined in 18 U.S.C. § 1112(a) as: "the unlawful killing of a human being without malice . . . [u]pon a sudden quarrel or heat of passion." If malice is present, then the crime is second-degree murder; if malice is absent, the crime is manslaughter. *United*

---

[1] The Baja Penal Code defines advantage in four ways:

I.    When the criminal is physically stronger than the victim and the victim is not armed.

II.   When the criminal is in a superior position because of the weapons that he or she uses, because of his/her greater skill in handling such weapons, or because of the number of individuals accompanying him/her.

III.  When the criminal makes use of a means that weakens the victim's defenses, or

IV.   When the victim is unarmed or has fallen, and the criminal is armed or standing up.

BAJA PENAL CODE ART. 148.

[2] "The term 'malice' has a different meaning under the Baja Penal Code, than in United States jurisprudence." *Lizama*, 245 F.3d at 505 n.1 (citing *Kleeman*, 125 F.3d at 731 n.7).

*States v. Collins*, 690 F.2d 431, 437 (5th Cir. 1982). "The fact that distinguishes manslaughter from murder is the existence of malice." *Id.*; *see also* 18 U.S.C. § 1112.

The Mexican court found that Frascarelli committed homicide with advantage under the Baja Penal Code. The Mexican court supported its conclusion that Frascarelli committed the crime with advantage under the Baja Penal Code's fourth definition of advantage—that when Frascarelli killed Conway, she was unarmed and had fallen while he was armed and standing.

Frascarelli argues that the Commission erred in finding that second-degree murder was the federal offense most analogous to his Mexican crime. He first contends that the Mexican conviction alone did not require a finding that a human being was killed with malice aforethought. Frascarelli also argues that the underlying facts would not support a conviction of second-degree murder.

Frascarelli's first contention is correct—a conviction of qualified homicide committed with advantage under the Baja Penal Code requires no finding that a defendant acted with malice. Malice exists if a defendant acts with a certain mental state, *see Browner*, 889 F.2d at 551–52, whereas homicide committed with advantage exists based on facts surrounding the killing, *see* BAJA PENAL CODE ART. 148. Therefore, comparing the offense definitions alone is insufficient to reach a final conclusion. *See Lizama*, 245 F.3d at 505 (quoting 28 C.F.R. § 2.68(g)); *Kleeman*, 125 F.3d at 732 n.9 ("Given the differences between the Baja Penal Code and the United States Code with respect to voluntary manslaughter, the Commission was required to evaluate the underlying circumstances of the offense behavior, not simply the offense definition under foreign law."). Therefore, we must look to the underlying

circumstances of Frascarelli's behavior to come to our conclusion.  In doing so, however, we reject Frascarelli's argument that the evidence presented in the Mexican court's judgment supports only a conviction of voluntary manslaughter and that the Commission erred in concluding otherwise.

In support of that argument, Frascarelli asserts that he and Conway had a volatile relationship—that they constantly argued, that she ordered him around, and that they were addicted to drugs and alcohol.  According to Frascarelli, after suffering months of abuse from their dysfunctional relationship, he snapped, "got a hammer, hit her with it, and strangled her until she was dead."  Frascarelli's version of events is that of a lovers' quarrel gone wrong—that Conway provoked him by her abusive treatment, and that, in a moment of passion, he killed her, thus acting without malice and committing voluntary manslaughter.  Frascarelli further asserts that there is no evidence that the pre-killing argument had ended or that enough time had passed between Conway's provocation and her death for Frascarelli to reflect on his course of action.

The Commission is required to credit the Mexican court's version of events.  *See* 28 C.F.R. § 2.68(a)(4); *Lizama*, 245 F.3d at 506–07.  But the Commission may make factual findings as to the underlying circumstances of the crime that are not inconsistent with the Mexican court's determinations.  *See Lizama*, 245 F.3d at 505 (quoting 28 C.F.R. § 2.68(g)); 28 C.F.R. § 2.68(h)(5).  The question for the Commission, therefore, was whether these underlying circumstances are more consistent with a finding of second-degree murder (with malice) or voluntary manslaughter (in the heat of passion).

A killing in the heat of passion occurs when "the defendant loses his normal self-control as a result of circumstances that would provoke such a

passion in an ordinary person, but which did not justify the use of deadly force." *Browner*, 889 F.2d at 552. "The malice that would otherwise attach is *negated* by the fact that the intentional killing occurred in the heat of passion in response to a sufficient provocation." *Id.* The Model Penal Code "defines a heat-of-passion killing . . . as 'a homicide which would otherwise be murder . . . committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse. The reasonableness of such explanation . . . shall be determined from the viewpoint of a person in the actor's situation . . . .'" *United States v. Delaney*, 717 F.3d 553, 558 (7th Cir. 2013) (quoting MODEL PENAL CODE § 210.3(1)(b) (AM. LAW INST. 1962)).

The Government typically bears "the burden of proving absence of heat of passion beyond a reasonable doubt." *Id.* at 559 (citing *Mullaney v. Wilbur,* 421 U.S. 684, 703–04 (1975); *United States v. Martinez,* 988 F.2d 685, 690 (7th Cir. 1993); *United States v. Lofton,* 776 F.2d 918, 921–22 (10th Cir. 1985)). In other words, "the malice element of the traditional offense of murder implicitly forces prosecutors to *disprove* the existence of adequate provocation when the evidence suggests that it may be present." *Browner*, 889 F.2d at 552. But "the defendant [is required] to make an initial showing that the defense has some evidentiary support; only then is the burden of proof beyond a reasonable doubt laid on the government." *Delaney*, 717 F.3d at 559 (citing *United States v. Begay,* 673 F.3d 1038, 1045 (9th Cir. 2011) (en banc); *Lofton,* 776 F.2d at 920)). Another way of describing the process is that "[t]he jury ha[s] to find malice beyond a reasonable doubt in order to convict the defendant of murder, and so evidence that [the defendant] acted in the heat of passion and therefore

without malice would if believed require the jury to acquit him of the charge of murder." *Id.*[3]

Hitting a defendant in the face with a hammer, followed by strangling her, would usually show one of the three kinds of malice—"(1) intent to kill; (2) intent to do serious bodily injury; [or] (3) . . . extreme recklessness and wanton disregard for human life." *Browner*, 889 F.2d at 552. We conclude here that sufficient evidence was presented for a jury to find that Frascarelli acted with malice and did not kill Conway in the heat of passion.

First, there is scant evidence that Conway said or did anything during their argument over money to constitute adequate provocation that would provoke a reasonable person to kill. The only evidence of provocation that the Commission found credible was evidence both that they were arguing about money and that Frascarelli was fed up with her. Second, there was evidence, and Frascarelli himself admits, that he made up the story about the masked men. Such fabrication tends to support a conclusion that Frascarelli invented the story to deflect attention from his malicious crime. Indeed, Frascarelli's having told three different versions of events is consistent with having acted with malice when he killed Conway. Finally, the fact that Frascarelli walked down and up a flight of stairs to obtain the hammer, as well as Frascarelli's subsequent decision to strangle Conway, is evidence that the heat of passion had time to "cool." *See Collins v. United States*, 150 U.S. 62, 65 (1893); *see also*

---

[3] Whether a criminal defendant committed malice is typically a fact question for the jury. *See United States v. Chagra*, 807 F.2d 398, 402 (5th Cir. 1986); *see also Delaney*, 717 F.3d at 555–58; *Collins*, 690 F.2d at 437; *United States v. McRae*, 593 F.2d 700, 704–05 (5th Cir. 1979); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 2.53 (2015).

Frascarelli argues that the Ninth Circuit applied a de novo standard of review to determine whether the alleged acts supported second-degree murder. *Kleeman*, 125 F.3d at 730 n.6, 732. However, that case involved a determination that there was no evidence to support a conclusion that the petitioner acted with malice. *Id.* at 732.

No. 16-60235

*Collins*, 690 F.2d at 436; *People v. Edgmon*, 73 Cal. Rptr. 634, 639 (Cal. Ct. App. 1968).  Therefore, we conclude that the Commission did not clearly err in finding that Frascarelli acted with malice.  Accordingly, we affirm the Parole Commission's transfer-treaty determination.[4]

AFFIRMED.

---

[4] At oral argument, Frascarelli's counsel asserted that when a set of facts could result in a determination of two similar U.S. offenses, due process requires that the Commission choose the least culpable similar offense.  Counsel's rationale for this rule is that, if one of the transfer defendants were to have been convicted by a U.S. court, due process would require a prosecutor to prove each element beyond a reasonable doubt.

But this contention is inconsistent with the relevant federal regulations and statutes. In fact, as counsel admitted, her argument is not supported by any case law.    Furthermore, due process does not require the Commission to choose the least culpable offense because a transfer-treaty defendant is not convicted according to U.S. law.  His or her foreign convictions are merely converted. *See Molano-Garza*, 965 F.2d at 22.  Finally, defendants are given sufficient due process protection by the fact that the transfer sentence may not be longer than the sentence imposed in the transferor country.  18 U.S.C. § 4106A(b)(C).  We therefore reject this argument.