# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2025

Lyle W. Cayce
Clerk

No. 24-30613

United States of America,

*Plaintiff—Appellee*,

*versus*

Rayshaud Green,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CR-34-2

_____

Before Southwick, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Following a shootout in which one victim was killed, Defendant Rayshaud Green pled guilty to possession of a firearm as a felon and possession of a machine gun. The district court accepted that plea and adjudged Green guilty. At sentencing, the district court rejected Green's contention that he acted in self-defense as well as his assertions in the alternative that he did not aid and abet his co-defendant and that he acted in

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

a "heat of passion." The district court applied a guidelines cross-reference to second-degree murder rather than voluntary manslaughter. Green was sentenced to the statutory maximum of 180 months.

On appeal, Green contends that the district court clearly erred in concluding that he did not act in self-defense. Alternatively, Green maintains that the district court clearly erred in concluding both that he aided and abetted his codefendant and that he did so outside a "heat of passion." Green asks this court to vacate his sentence and remand for resentencing with either no homicide cross-reference, or a cross-reference only to voluntary manslaughter. He also renews facial and as-applied constitutional challenges to 18 U.S.C. § 922(g)(1). We affirm.

## I.

In August 2022, Rayshaud Green was involved in a shootout at the home of his stepfather and codefendant, Alphonse Bazile. On the day of the shooting, Bazile's grandson began fighting another juvenile who had come to the home with some companions. Green and Bazile witnessed the fight and told the adolescents to leave. About thirty minutes later, some of them returned in a white car, and two approached Green and Bazile. These teenagers brandished firearms and one juvenile later told police that the group had returned to continue the fight. Bazile again told them to leave, and he and Green walked into Bazile's house and closed the door. The two teens began to walk away, and the white car in which they had arrived left.

After reentering the home, Bazile and Green armed themselves. Green grabbed a 9-millimeter handgun with no serial number and a Glock auto-sear that allowed the weapon to fire automatically. Bazile and Green met in the backyard, and the two then reentered the home. About forty seconds after they had initially reentered the home, Bazile walked through the front door and brandished his weapon while standing on the front lawn.

Green quickly followed, standing in the doorway with his own firearm drawn. By this time, the two teenagers had retreated about a hundred yards from the home. When Bazile exited the house with his gun, one of the two teens began running away, and Green and Bazile began firing at the second. That juvenile was shot five times and died at the scene. Based on later ballistic testing, Bazile fired the shots that killed the victim.

After the initial volley of gunfire, Green and Bazile reentered the home. The victim's companions returned in their car and, upon discovering his body, began shooting at Bazile's house. The district court determined that this shooting began only after Bazile and Green had discharged their weapons, struck the victim, and reentered the home. The entire exchange of gunfire lasted about one minute. Green then left the scene through the backyard. He was apprehended roughly three weeks later. Searching his home, police discovered the weapon Green had used in the shooting.

Following his arrest, Green pled guilty to possession of a firearm by a felon under 18 U.S.C. § 922(g)(1) and possession of a machine gun under 18 U.S.C. § 922(o). Green admitted to the factual basis for the offense, which included the facts as described above, as part of his plea agreement. The district court accepted Green's plea and adjudged him guilty.

An initial presentence investigation report (PSR) recommended a cross-reference to voluntary manslaughter under U.S.S.G. § 2A1.3. Green objected, arguing that no homicide cross-reference was appropriate because he acted in self-defense against multiple aggressors. Green asserted that he satisfied all four criteria for self-defense under *United States v. Santiago*, 96 F.4th 834 (5th Cir. 2024), but he provided little support for this assertion. He further contended that a cross-reference to involuntary manslaughter was inappropriate because Bazile, not Green, fatally shot the victim.

No. 24-30613

The Government also objected to the PSR. The Government contended that the four elements of self-defense under *Santiago* were not met, so a cross-reference to homicide was appropriate.[1] But the Government went further, asserting that a cross-reference to first- or second-degree murder was warranted because Green and Bazile had acted with malice by escalating the situation with deadly force.

The district court agreed with the Government on four key issues. First, while Bazile fired the fatal shots, the court found that Green aided and abetted Bazile. Next, the court found that Green's behavior exhibited the "extreme recklessness and wanton disregard for human life" that justified a cross-reference to second-degree murder. Further, the court rejected the contention that Green acted in self-defense, finding that the required elements of *Santiago* were not satisfied. The district court also rejected Green's argument that he acted in a "heat of passion." As a result, the district court concluded that a heightened cross-reference to murder, rather than voluntary manslaughter, was justified.

The district court applied a cross-reference for second-degree murder, shifting the applicable guideline range from 78–97 months (based on a cross-reference to voluntary manslaughter) to 210–262 months. *See* U.S.S.G. § 2K2.1(c). The district court then sentenced Green to the statutory maximums of 180 months for possession of a firearm as a felon and 120 months for possession of a machine gun, to be served concurrently.

---

[1] The Government analyzed this issue under the test from *United States v. Penn*, 969 F.3d 450 (5th Cir. 2020), but the first four prongs of *Penn* are identical to the four elements of self-defense in *Santiago*. Thus, analysis of a self-defense claim under *Penn* remains relevant to the analysis of such a claim under *Santiago*.

4

## II.

This Court reviews "preserved objections to a district court's calculation and application of [sentencing] guidelines *de novo* and its findings of fact for clear error." *Santiago*, 96 F.4th at 847. At sentencing, judges are also "permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Choulat*, 75 F.4th 489, 491 (5th Cir. 2023). A losing party cannot "use the appellate courts to reconstruct a new record for [his] losing case," and the district court's acceptance of the factual basis for a guilty plea is reviewed only for clear error. *United States v. Reasor*, 418 F.3d 466, 474 (5th Cir. 2005). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Santiago*, 96 F.4th at 847. Facts relevant to sentencing "must be established by a preponderance of the evidence." *Id.* at 849. The burden is on the Government to show the facts necessary to support a guidelines cross-reference. *See United States v. Paul*, 274 F.3d 155, 164 (5th Cir. 2001).

## III.

Self-defense is an affirmative defense that "negates the elements of criminal behavior." *Santiago*, 96 F.4th at 849 (citation omitted). To establish a valid self-defense claim, Green must show that:

> . . . (1) he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; (2) he had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct; (3) he had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also avoid the threatened harm; and (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*Id.* at 850 (citations omitted); *see also United States v. Gant*, 691 F.2d 1159, 1162–63 (5th Cir. 1982). If *any* of these elements is not satisfied, the defendant's self-defense claim fails. *Santiago*, 96 F.4th at 850. In arguing that the district court erred by rejecting Green's self-defense claim, Green challenges both (A) the district court's factual findings, as well as (B) its conclusion that he satisfied none of the elements for self-defense.

**A.**

During sentencing, Green contended that he acted in self-defense against "multiple aggressors" who provoked the incident. But he presented little evidence to support this finding, and his version of events was rejected by the district court. On appeal, Green largely challenges the district court's factual determinations. If this court accepts a different version of events, Green maintains, the determination that he did not act in self-defense was clearly erroneous.

First, Green asserts that the Government misrepresented a still image taken from video footage captured by Bazile's security camera. The image, featuring Green and Bazile standing in the backyard with loaded firearms, was included in the factual basis with a caption describing the men as "meeting in the backyard, both armed with loaded firearms." Green theorizes that the Government cropped out the time stamp on the image to give the false impression that it represented a pre-shooting backyard meeting by the armed men. Properly sequenced, Green asserts, the video proves that he and Bazile did not meet in the backyard before the shooting but only did so afterward.

The district court determined that Green and Bazile met in the house's backyard after arming themselves but before reemerging and shooting. This is well supported by the record, including by the PSR, the accuracy of which Green does not challenge. *See United States v. Bourrage*,

138 F.4th 327, 353 (5th Cir. 2025) ("[T]he defendant bears the burden of demonstrating the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it."). In addition, the factual basis for Green's guilty plea, which he closely examined before entering his plea, also includes this image and caption. And he received explanations from both his attorney and the district court before acknowledging that the factual basis was all "true and accurate" and "correct." By contrast, the evidence summoned by Green proves, at most, that the two men met in the backyard after the shooting—it does not *disprove* that they met beforehand as well. Even if Green plausibly disputes the chain of events, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Torres-Magana*, 938 F.3d 213, 216 (5th Cir. 2019) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Second, Green asserts that the juveniles initiated the shootout and that he did not confront them until he heard gunfire being exchanged outside. To support this assertion, Green presents a single line of testimony from a witness that Green began shooting after gunfire was "exchanged . . . in some way or another[.]" Green also points to a few seconds of video footage that purportedly show "bushes appear[ing] to react" to gunfire before Bazile begins shooting.

The district court, however, determined that the teens were retreating when Bazile opened fire, joined quickly by Green, and this finding has significant record support. Green's suggestion that he remained passively in the home until fired upon is contradicted by portions of the record, including Green's own objections to the PSR, in which he acknowledged that he began shooting very soon after Bazile, as well as the testimony of eyewitnesses. Once more, Green may propose an arguable version of events, but a competing view of the evidence does not equate to clear error when the

7

district court's determinations are plausible and well-supported by the record. *See Santiago*, 96 F.4th at 847.

## B.

Turning to the *Santiago* factors, the district court did not err in finding that Green failed to satisfy any element of self-defense.

First, Green had to demonstrate that "he was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *Id.* at 850. Green and Bazile reentered the house safely, and there is no evidence that, at that point, the juveniles renewed their threat or began approaching the home. In fact, the district court determined that the adolescents had begun to retreat by the time Bazile and Green exited the home and began firing. This is supported by video evidence showing that the two teens were about a hundred yards away from the house when Bazile began firing without provocation. Thus, the district court's conclusion that Green and Bazile did not face an imminent threat at the time of the shooting is plausible, not clearly erroneous.

Second, Green needed to show that he did not recklessly or negligently place himself in the situation that forced his criminal behavior. *Id.* Green contends that the juveniles provoked the entire incident by brandishing weapons when they returned in their vehicle. But this considers only a truncated record: Green and Bazile safely entered the home, and no threat persisted once they were inside. The men armed themselves with illegal weapons and reemerged, shooting at juveniles who were dispersed or fleeing. By comparison, this court has held that a defendant who simply approached a doorway and took a gun from a codefendant recklessly placed himself in an unlawful situation. *See United States v. Clark*, 741 F.2d 699, 704 (5th Cir. 1984). Here, the district court did not clearly err in concluding that

Green provoked or recklessly placed himself in the instant danger by arming himself and opening fire on juveniles who presented no imminent threat.

Third, Green had to show that no reasonable, legal alternative course of action was available. *Santiago*, 96 F.4th at 850. A reasonable, legal alternative is any "chance to refuse to do the criminal act and also to avoid the threatened harm." *Gant*, 691 F.2d at 1163. To establish that no such alternative was possible, Green must have "actually tried the alternative or had no time to try it[.]" *United States v. Posada-Rios*, 158 F.3d 832, 874 (5th Cir. 1998). This is an objective inquiry: Green's "subjective belief as to available legal alternatives is not determinative." *Id.*

Green contends that he began to shoot at the juveniles only after they began firing upon Bazile, at which point he felt he had no option other than to exit and immediately open fire. But this ignores Green's actions after he first confronted the juveniles, as well as the alternatives available to him. Green and Bazile safely entered the home, and the record suggests no continued threat. Yet Green walked through the house and armed himself before reemerging and quickly opening fire. Absent immediate threat, Green could have pursued a legal alternative, such as calling the police, remaining safely in the home, or leaving through the backyard (as he eventually did). *See id.*; *see also United States v. Harper*, 802 F.2d 115, 118 (5th Cir. 1986) (contacting the police a reasonable alternative). Again, the district court's conclusion that Green had reasonable alternatives to lethal force is plausible and not clearly erroneous.

Finally, Green had to establish that his criminal acts were necessary to avoid harm. *Santiago*, 96 F.4th at 850. Much of the discussion of reasonable alternatives remains relevant: Green and Bazile safely entered the home and did not experience a continued threat. The two men had time—at least forty seconds—to walk through the home, arm themselves, and return to open fire,

neglecting available legal alternatives. The district court's conclusion that their shooting was unnecessary to avoid harm is therefore not clearly erroneous.

For Green's self-defense claim to succeed, *all four* of the elements described above must be satisfied. *Id.* The district court's determination that none were met is certainly plausible and easily survives clear error review.

## IV.

In applying the cross-reference provisions of U.S.S.G. § 2K2.1(c), the district court was "required to determine what federal homicide offense was most analogous" to Green's conduct. *United States v. Hicks*, 389 F.3d 514, 530 (5th Cir. 2004). "A district court may draw reasonable inferences from the facts when determining whether an enhancement applies, and we review those inferences for clear error." *United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010) (citation omitted). The Government must establish "sentencing facts . . . by a preponderance of the evidence," *Santiago*, 96 F.4th at 849, and any sentence may not exceed the statutory maximum based on those facts, *Hicks*, 389 F.3d at 530.

Whether the appropriate homicide cross-reference in Green's case was to second-degree murder implicates two separate inquiries: whether the district court (A) correctly determined that Green aided and abetted Bazile, and (B) properly found that Green did not act in a "heat of passion," which would reduce the applicable cross-reference from murder to voluntary manslaughter.

## A.

In firearm cases resulting in death, district courts must apply "the most analogous [homicide] offense guideline" as a cross-reference, U.S.S.G. § 2K2.1(c), based on "all acts and omissions committed, aided, abetted . . .

or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Aiding and abetting "means simply that the [defendant] assisted a criminal venture while sharing the requisite criminal intent, and took some affirmative action to make the venture succeed." *United States v. Anderson*, 174 F.3d 515, 523 (5th Cir. 1999). A defendant who aids and abets will face the same sentencing consequences as the principal. *United States v. Hill*, 63 F.4th 335, 363 (5th Cir. 2023). Based on its finding that Green aided and abetted Bazile, the district court applied a cross-reference to second-degree murder in sentencing Green.

Second-degree murder, unlike manslaughter, requires a finding of "malice," a term encompassing an intent to kill or inflict serious injury, as well as "a level of extreme recklessness and wanton disregard for human life." *Frascarelli v. U.S. Parole Comm'n*, 857 F.3d 701, 705–06 (5th Cir. 2017); *see also* 18 U.S.C. § 1111(a). Intentionally firing a weapon in a manner likely to strike a victim constitutes malice, absent a countervailing defense. *See Hicks*, 389 F.3d at 530 (firing toward a police cruiser constituted malice); *United States v. Ramirez*, 93 F. App'x 636, 637–38 (5th Cir. 2004) (shooting a victim without a valid self-defense claim warranted a cross-reference to second-degree murder). Here, Green and Bazile fired many rounds from automatic weapons towards retreating juveniles, in a residential neighborhood. Police testimony indicated that some of their bullets penetrated the living room of a home across the street where children were present. Accordingly, the district court found that the men "demonstrated an extreme level of recklessness and wanton disregard for human life," justifying a cross-reference to second-degree murder.

Though Bazile fatally shot the victim, Green could be held responsible for shots fired by Bazile for purposes of sentencing, so long as Green also possessed the required criminal intent. *See Anderson*, 174 F.3d at 523. Green does not dispute that Bazile's actions support a cross-reference to second-

degree murder; he contests that he aided and abetted Bazile in causing the death. Thus, Green denies that he agreed to a criminal venture and that he had the requisite criminal intent, asserting that he had no plan to join an armed confrontation with the juveniles but was forced to join Bazile after hearing gunfire. He maintains that any "assistance" he offered was solely to defend himself and Bazile.

The district court's conclusion that Green aided and abetted Bazile rested on essentially two factual determinations. First, Green assisted Bazile by reemerging with his gun and firing at the victim (and others). And second, Green shared Bazile's criminal intent because he did not act in self-defense but rather escalated a nonthreatening situation by his use of deadly force. As already discussed, these factual findings are not clearly erroneous, and Green's competing account of events also contradicts significant evidence that he exited the home and began firing almost immediately after Bazile did.

Further, our precedent makes clear that a codefendant who supports a shooter by joining in the shooting or by other means has aided and abetted the shooter's offense. *See United States v. Branch*, 91 F.3d 699, 730, 732 (5th Cir. 1996) (defendant fired a weapon alongside codefendants in a gunfight); *see also United States v. Sauseda*, 526 F. App'x 349, 354 (5th Cir. 2013) (defendant hid and possessed a weapon during a gunfight led by his codefendant). Whether a defendant possessed a certain criminal intent is a factual question reviewed deferentially for clear error. *See United States v. Shackelford*, 677 F.2d 422, 425 (5th Cir. 1982); *see also Santiago*, 96 F.4th at 847. Bearing that standard in mind, the district court's finding that Green and Bazile shared the requisite criminal intent is plausible.

## B.

Green seeks to negate the finding that he acted with malice by contending that any criminal acts were done in "the heat of passion." Heat

of passion" refers to "fear or rage in which the defendant loses his normal self-control [in] circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force." *United States v. Browner*, 889 F.2d 549, 553 (5th Cir. 1989). If Green acted upon "a sudden quarrel or heat of passion," the appropriate cross-reference would be to voluntary manslaughter, not second-degree murder. *See* 18 U.S.C. § 1112(a) (defining voluntary manslaughter); *Lizama v. U.S. Parole Comm'n*, 245 F.3d 503, 506 (5th Cir. 2001). However, even if there was provocation triggering passion, voluntary manslaughter requires that there be no "cooling off" period between the provocation and the killing. *See United States v. Collins*, 690 F.2d 431, 437 (5th Cir. 1982) (instructions on murder, rather than voluntary manslaughter, were proper when the defendant had "ample time for his blood to cool and for reflection"); *Frascarelli*, 857 F.3d at 708.

Here, Green contends that hearing gunfire outside the home provoked him to lose his normal self-control and "experience the heat of passion." He repeats his characterization that he waited in the home and only exited when he heard gunfire that he believed threatened Bazile. On Green's telling, there was no time to "cool off" or consider his actions—he responded to provocation immediately by exiting the home and firing.

But Green offers no reason to disturb the district court's factual findings, including that Green and Bazile safely reentered the home and then armed themselves before walking back through the house, crossing the front yard, and opening fire on the retreating teenagers. The district court determined that, from the perspective of an ordinary person, the gap between the initial confrontation and the shooting was sufficient opportunity for the two men to cool off, separate from the juveniles, and avoid further conflict.

Rightly so. Our decision in *Frascarelli* is instructive: In that case, after feuding with his girlfriend, a man descended a staircase, retrieved a hammer,

13

and walked back upstairs to kill her. *Id.* at 703. Frascarelli maintained that he was provoked by his girlfriend and acted in a "heat of passion," but this court held that the time in which Frascarelli gathered the hammer was time enough for his passion to subside. *Id.* at 707. Here, the separation between the initial provocation and Green's actions was even more protracted. If Frascarelli had ample time to "cool down" when moving between rooms of a home, then the forty seconds that Green used to retreat inside, arm himself, and reemerge was sufficient time for any "heat of passion" to cool. *See Collins*, 690 F.2d at 436 (recognizing that even a brief "pause" between stabbings indicated time for reflection, so that the killing was not "the result of persistence of an initial impulse of passion"). Consequently, the district court's application of a cross-reference to second-degree murder was proper.

## V.

Green pled guilty to firearm possession as a felon under 18 U.S.C. § 922(g)(1), based on his predicate conviction for carjacking. He contends that § 922(g)(1) violates the Second Amendment under *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). According to Green, § 922(g)(1) is facially invalid because no "well-established and representative historical analogue" exists for categorically disarming felons. *Id.* at 30. He also asserts the law is unconstitutional as applied to him, because no analogue supports application of the § 922(g)(1) prohibition to his predicate offense, carjacking.

But this court has recently upheld § 922(g)(1) against facial challenges—including by a felon whose predicate offense involved vehicle theft. *United States v. Diaz*, 116 F.4th 458, 468–69 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). Subsequently, this court has also rejected as-applied challenges to § 922(g)(1) in cases, like this one, where the defendant's predicate felony was theft. *See United States v. Schnur*, 132 F.4th

No. 24-30613

863, 870–71 (5th Cir. 2025); *United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024).  Green's constitutional challenges are thus squarely foreclosed by our precedent, as Green himself concedes.

\*　　\*　　\*

Green fails to demonstrate that the district court erred in rejecting his self-defense claim or in finding that Green did not act in a "heat of passion." Based on those findings, and its conclusion that Green aided and abetted his codefendant in shooting the juvenile victim, the district court did not err in applying a cross-reference to second-degree murder in sentencing him. Green's constitutional challenges to § 922(g)(1) also straightforwardly fail under our precedent.  The judgment of the district court is

AFFIRMED.