**Opinion filed September 29, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00101-CR

_____

## DON DEL REAL HERRERA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 142nd District Court**
**Midland County, Texas**
**Trial Court Cause No. CR51729**

## O P I N I O N

Appellant, Don Del Real Herrera, was indicted for capital murder and murder. Pursuant to an agreement between the State and Appellant, the State abandoned the capital murder charge and Appellant pleaded guilty to murder. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2019). Appellant elected to have a jury assess his punishment following his plea of guilty. The jury assessed Appellant's punishment

at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced Appellant in accordance with the jury's verdict. *See* PENAL §§ 12.32(a), 19.02(c).

Appellant asserts three issues on appeal. First, he argues that the trial court's instructions to the jury incorrectly assigned him the burden of proof regarding the issue of sudden passion. Second, he argues that the State misstated the law on sudden passion during closing argument and that it made improper comments regarding Appellant's unadjudicated offenses. Third, he argues that the trial court should have "issued" a mistrial after the State "mishandled" evidence, Appellant's cell phone, which violated his due process rights. We affirm.

*Factual and Procedural History*

On April 13, 2018, Appellant left work around 5:30 p.m. He texted Francisca Ybarra (Francis), his romantic partner of twelve years, regarding dinner plans, but Francis responded that she was working late.[1] After Appellant sent a series of text messages accusing Francis of being with another man, she told Appellant to not pick her up after her shift ended. Around 1:00 a.m., Francis sent Appellant three texts in quick succession: "Come get me," "Ya or nah," and "Never Mind." According to Appellant, he called Francis and told her that he would come by and pick her up. When Appellant arrived at Detour Bar where Francis worked, he went inside to get Francis. One of the bar patrons, Vincent Sandoval (Vince), told Appellant that Francis had left with a man, and that the two had gone to Vince's house.

Appellant drove to Vince's house and walked in on Francis and Steven Ramos naked on the bed. Steven testified that Appellant kicked in the door and began to approach Francis. Francis told Steven to leave, and he hurriedly left for his brother's

---

[1]When asked if he was married to Francis, Appellant responded "they say it's common law, but I don't know how that works."

2

house across the street from which 9-1-1 was called. When police arrived at Vince's house, they saw Appellant on the front lawn, covered in blood, standing over Francis's body.[2] Police observed that Appellant held a knife in his hand. When police approached, they observed multiple wounds on Francis's body, including a severe neck laceration. An officer noted that despite her injuries, Francis was still breathing; she was later pronounced dead at the scene.

I.  *Sudden Passion - the trial court's charge included an appropriate instruction that was consistent with Texas law*

In Appellant's first issue, he argues that the trial court gave erroneous instructions on the law of sudden passion because it improperly shifted the burden of proof to Appellant.

1. *Standard of Review*

Appellate review of alleged charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). First, we must determine whether charge error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch*, 357 S.W.3d at 649). Second, if error does exist, we must then conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.*; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).

The trial court has the responsibility to provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN.

---

[2]In Appellant's interview with law enforcement, he claims that he "just lost it," and that he did not remember everything that happened. But his story evolved throughout the interview. Although Appellant claimed to not remember everything, he admitted certain things when asked directly, such as "trying to" cut Francis, cutting her throat, or stabbing her stomach.

3

art. 36.14 (West 2007). Charge error may stem from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14). Therefore, because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). As such, when the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis. *See Bell*, 635 S.W.3d at 645.

2. *Analysis*

The punishment charge correctly described the burden of proof. In relevant part, the charge read: "The burden is on the defendant to prove by a preponderance of the evidence that he acted under the influence of sudden passion." Through Section 19.02(d) of the Penal Code, the legislature placed the burden of proof squarely on the defendant, stating:

> At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

PENAL § 19.02(d); *see Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013) ("The defendant has the burden of production and persuasion with respect to the issue of sudden passion.").[3] Because the punishment charge was correct, the trial court did not err.

---

[3]We note that, while the defendant has the burden of proof with respect to the issue of sudden passion, the evidence that raises the issue may be from any source and during either phase of trial. *Wooten*, 400 S.W.3d at 605.

In his reply brief, Appellant argues for the first time on appeal that "Texas's voluntary manslaughter scheme," is unconstitutional.[4] Appellant contends that, when the Texas Legislature amended Sections 19.02 and 19.04 thirty years ago to include "sudden passion" in the murder statute, it "unconstitutionally shifted the burden of proof and persuasion for voluntary manslaughter onto defendants." *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14 (codified at PENAL §§ 19.02(a), (d), 19.04(a)). He argues that "such burden flies in the face of analogous federal law and is contrary to traditional notions of fairness, justice[,] and due process." As Appellant describes the issue, he attempts to present a complaint that Section 19.02(d) is facially unconstitutional. A complaint that a statute is facially unconstitutional may be forfeited if appellate review is not properly preserved. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that "a defendant may not raise for the first time on appeal a facial challenge to the constitutionality of a statute"); *Williams v. State*, 305 S.W.3d 886, 893 (Tex. App.—Texarkana 2010, no pet.) (citing *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995)).

Even if his argument were properly presented for our review, we note that— nearly fifty years ago—the Supreme Court declined to adopt a constitutional imperative that a State must disprove beyond a reasonable doubt every fact that constitutes any and all affirmative defenses relating to the culpability of the accused. *Patterson v. New York*, 432 U.S. 197, 210 (1977). As the source of authority for his proposition, Appellant relies on a Supreme Court case that was discussed and distinguished by the court in *Patterson* for the same reason it is distinguishable today.

---

[4]Appellant's argument is in response to the State's argument that "[i]t is constitutional to shift the burden of mitigation issues to a criminal defendant." *See* TEX. R. APP. P. 38.3.

Specifically, Appellant relies upon *Mullaney v. Wilbur*, 421 U.S. 684 (1975). In *Wilbur*, the statute at issue included an *element of the offense*, malice, that was presumed and could only be rebutted by a defendant "proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation." *See Patterson*, 432 U.S. 216. In contrast, the murder statute at issue in *Patterson*, as it does in this case, did not "presume" or "imply" any fact against a defendant that he or she needed to disprove "in order to constitute the crime." *Id.* at 205–06, 216. Instead, the murder statute in *Patterson* required three elements: (1) death, (2) intent to kill, and (3) causation. *Id.* at 205. The statute also provided an affirmative defense that could reduce the offense to manslaughter if the defendant proved that he acted "under the influence of extreme emotional disturbance for which there was a reasonable explanation." *Id.* at 206.

Section 19.02(d) equally does not require defendants to disprove any elements of the offense of murder. Instead, it provides a defendant with the opportunity to present mitigating circumstances during the punishment phase of trial that, if proved, would reduce a convicted murder defendant's range of punishment to a second-degree range. PENAL § 19.02(d); *Beltran v. State*, 472 S.W.3d 283, 293 (Tex. Crim. App. 2015) ("Sudden passion is a mitigating circumstance that is relevant to determining the appropriate punishment of a defendant."); *Barron v. State*, 630 S.W.3d 392, 402 (Tex. App.—Eastland 2021, pet. ref'd) (a "sudden passion" finding, when the defendant is convicted of murder, reduces the punishment for the convicted offense to a second-degree punishment range); *see Dwelle v. State*, No. 11-20-00237-CR, 2022 WL 2720445, at *3 (Tex. App—Eastland July 14, 2022, no pet.) (mem. op., not designated for publication) (the issue of sudden passion is akin to an affirmative defense); *Gonzales v. State*, No. 11-17-00245-CR, 2019 WL

3727509, at \*1 (Tex. App.—Eastland Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication) (same). The Supreme Court in *Patterson* was clear:

> We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused. . . . We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense of which the defendant is charged.* Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.

*Patterson*, 432 U.S. at 210 (emphasis added). As to the current Texas murder statute, *Patterson* settles the issue. Sudden passion is *not* within the definition of the offense of which Appellant was charged or convicted. *See* PENAL § 19.02(b).

"Before September 1, 1994, the Penal Code defined voluntary manslaughter as causing the death of a person under circumstances that would constitute murder, except that the person acted 'under the immediate influence of sudden passion arising from an adequate cause.' So at that time, sudden passion was a guilt/innocence issue." *Trevino v. State*, 100 S.W.3d 232, 236 (Tex. Crim. App. 2003); *Sanchez v. State*, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000) ("[T]he existence of sudden passion was an element of the offense of voluntary manslaughter (a lesser-included offense of murder) to be determined by the jury at the guilt/innocence stage."). Effective September 1, 1994, the Legislature removed this definition of "voluntary manslaughter" from the Texas Penal Code and defined manslaughter as it does today: "recklessly causing the death of an individual." Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613–14 (codified at PENAL §§ 19.02(a), (d), 19.04(a)).

7

A new provision, subsection (d), was added to Section 19.02, which permitted the defendant to raise the issue of whether he caused the death under the immediate influence of sudden passion arising from adequate cause at the punishment stage of trial. PENAL § 19.02(d); *Moore v. State*, 969 S.W.2d 4, 8 n.1 (Tex. Crim. App. 1998) (discussing the legislative change to move the issue of sudden passion from the guilt/innocence phase of the trial to the punishment phase). The legislature has not amended Section 19.02(d) since its enactment. Thus, under the current statutory scheme, the question of whether a defendant killed another while under the immediate influence of sudden passion is a punishment issue. PENAL § 19.02(d); *Beltran*, 472 S.W.3d at 293. And if the defendant proves sudden passion by a preponderance of the evidence, the punishment to be determined falls within the range of punishment for a felony of the second degree. PENAL § 19.02(d). Accordingly, the State does not have the burden to prove the "nonexistence" of the facts underlying the mitigating circumstance of sudden passion; under *Patterson*, compelling the State to do so is not "constitutionally required." *Patterson*, 432 U.S. at 210. Instead, under the statute, the defendant has the burden of production and persuasion with respect to the issue of sudden passion. PENAL § 19.02(d); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). *Patterson* supports the Texas legislature's 1993 amendments and its statutory scheme as it relates to the mitigating circumstance of sudden passion. *See Patterson*, 432 U.S. at 205–10; *Wooten*, 400 S.W.3d at 605.

Relying heavily upon *Frascarelli v. United States Parole Comm'n*, 857 F.3d 701, 707 (5th Cir. 2017), Appellant contends that the government typically "bears 'the burden of proving absence of heat of passion beyond a reasonable doubt.'" *See Frascarelli,* 857 F.3d at 707 (quoting *United States v. Delaney,* 717 F.3d 553, 559 (7th Cir. 2013)). *Frascarelli* makes no constitutional argument or holding regarding

the burden imposed by the federal statutes it interprets—18 U.S.C. §§ 1111 (Murder) and 1112 (Manslaughter)—as opposed to those imposed by the law of any sovereign state, including Texas. *Id.* at 703, 705–08. Appellant provides no legal authority holding that, since *Patterson*, the law of *any* state has been held to be unconstitutional due to that state's allocation of the burden of proof for sudden passion. *Frascarelli* is not based upon the same statutes nor similar facts to that which Appellant presents in his appeal under Texas law. *See id.* at 703, 705–06. *Frascarelli* dealt with a prisoner convicted in Mexico that, pursuant to a treaty with the United States, requested a transfer to serve his term in the United States. *Id.* at 702–03. The court in *Frascarelli* was required to "take into account the offense definition under foreign law" and then apply the federal murder statutes. *Id.* at 705 (quoting *Lizama v. U.S. Parole Comm'n*, 245 F.3d 503, 505 (5th Cir. 2001)). Appellant makes no argument as to why under the current Texas statutes there is anything unconstitutional about placing the burden upon the defendant to prove sudden passion. And he cites no authoritative law holding same.

The trial court's punishment charge plainly instructed the jury on the applicable Texas law when it stated that the burden of proving sudden passion by a preponderance of the evidence was upon the defendant. Even if Appellant had not waived his constitutional argument, we conclude that our statutory scheme on sudden passion comports with *Patterson* and Section 19.02(d) and is not facially unconstitutional. *See* PENAL § 19.02(d); *Patterson*, 432 U.S. at 205–10.

Moreover, the Texas Court of Criminal Appeals has squarely addressed the issue multiple times and affirmed that "the burden of production and persuasion with respect to the issue of sudden passion" is upon the defendant. *See Wooten*, 400 S.W.3d at 605; *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); *see also Swearingen v. State*, 270 S.W.3d 804, 820 (Tex. App.—Austin. 2008, pet.

9

ref'd) ("The jury was properly instructed that to prove sudden passion, Swearingen had the burden of establishing, by a preponderance of the evidence, that he caused Stephanie's death 'while under the immediate influence of sudden passion arising from an adequate cause.'"). The trial court correctly instructed the jury on the law applicable to the case. Appellant's first issue is overruled.

## II. *Improper argument issues were not preserved*

In his second issue, Appellant argues that the State made improper arguments "about [Appellant's] past charges" because it referenced two "unadjudicated misdemeanors that should not have been introduced at trial" and an incident "that allege[d] aggravated assault."[5] Appellant asserts that the State's arguments about Appellant's offenses or bad acts was improper *because* evidence of such acts should not have been introduced in the first instance. In support, Appellant attaches the "relevant portions of [the] transcript" in an appendix that includes a conference on a motion in limine and other pretrial matters, opening statements, a witness's testimony, and a hearing on trial counsel's objections to a myriad of extraneous offenses. Within his second issue, Appellant also argues that the State made improper arguments during its closing statements when it "misstat[ed] the law on sudden passion."

In his brief on his second issue, Appellant commingles three separate and wholly distinct sub-issues: (1) did the State make improper arguments during its closing statements regarding Appellant's bad acts or other offenses; (2) were the bad acts or offenses properly admitted over Appellant's Rule 403 objection; and (3) did

---

[5]From his cited authority, we conclude that Appellant takes issue with the offenses that the State discussed during the State's closing arguments. *See, e.g.*, *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) (analyzing prosecutor's statements during closing arguments); *United States v. Munoz*, 150 F.3d 401, 414 (5th Cir. 1998) (analyzing prosecutor's statements made in part during closing argument); *United States v. Gracia*, 522 F.3d 597, 599, 603 (5th Cir. 2008) (analyzing remarks made by prosecutor during rebuttal closing argument).

the State make improper arguments during its closing statements regarding the law on sudden passion, and if so, whether the misstatement was harmful. Because only the second sub-issue was preserved for our review, we address the first and third sub-issues together.

### 1. *Standard of Review*

A trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Permissible jury argument generally falls into one of four categories: (1) summation of the evidence; (2) reasonable deduction of the evidence; (3) answer to opposing counsel's argument; and (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010) (citing *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000)). Counsel is also entitled to argue the law correctly, even when it is not included in the jury charge. *Molina v. State*, 587 S.W.3d 100, 109 (Tex. App.—Houston [1st Dist.] 2019), *aff'd*, 632 S.W.3d 539 (Tex. Crim. App. 2021). We examine rulings on alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *Thompson v. State*, No. 01-14-00862-CR, 2015 WL 9241691, at *2 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op., not designated for publication) (citing *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989)). Even if an argument is improper, reversal is only necessary if the statements deprived Appellant of a fair and impartial trial. *Id.* at *2.

### 2. *Applicable Law and Analysis*

Errors in closing argument require a specific and timely objection. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007); *Kennedy v. State*, 255 S.W.3d 684, 690 (Tex. App.—Eastland 2008, no pet.). While Appellant made multiple objections

during the State's closing argument, he did not object to the State's references to the extraneous offenses themselves—ostensibly because evidence of the offenses had already been admitted at trial and the State was answering opposing counsel's arguments. As a result, Appellant has not preserved this issue for our review and has waived his right to complain about the State's use of Appellant's extraneous offenses during closing argument. *See Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). Appellant's first sub-issue is overruled.

Similarly, Appellant's argument on appeal regarding the State's alleged improper statements on the law on sudden passion is not preserved for our review. While Appellant's trial counsel did object to the State's alleged mischaracterizations of the law on sudden passion in its closing argument, he did not object or take issue with the specific issue Appellant asserts on appeal—that Appellant did not (or should not) hold the burden of proof on the issue.[6] Specifically, the State concluded its argument with a statement that the burden was on Appellant:

> [THE STATE]: The main thing that I want you to keep in mind is that this is not the State's burden. It is the default in a murder case for the punishment to be 5 years to 99, or life. It is up to the Defendant to prove by a preponderance of the evidence, by the greater weight of credible evidence, that he acted in sudden passion, and that an ordinary person would have done the same.

Appellant's counsel did not object to the State's closing argument. As such, Appellant presents nothing for our review.[7] Appellant's third sub-issue is overruled.

---

[6]As detailed in our analysis on Appellant's first issue, Texas law places the burden of proof squarely on a defendant with regard to the mitigating circumstance of sudden passion. See PENAL § 1902(d); *Wooten*, 400 S.W.3d at 605.

[7]We note that Appellant cites to *Gracia*, 522 F.3d at 600, and other federal case law to describe the analytical framework for improper statements and examples of plain error. The Court of Criminal Appeals recently declined to extend the federal plain-error standard provided by *Gracia*, and instead reaffirmed that an appellant forfeits the ability to complain about improper statements if he or she does not object to the arguments, when made, at trial. *Mosley v. State*, 666 S.W.3d 670, 675 (Tex. Crim. App. 2023) (citing

III.    *Admission of the extraneous offenses - no abuse of discretion*

In his second sub-issue, Appellant argues that bad acts or offenses "fail[] under the *Gigliobianco*-test" and "the *Montgomery*-test," thereby asserting an argument under Rule 403.  *See Gigliobianco v. State*, 210 S.W.3d 637, 640 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1990). Appellant's trial counsel raised a specific Rule 403 objection to *one* offense or bad act at trial, namely an incident at Whataburger where it was alleged that Appellant committed an aggravated assault against Francis.  Therefore, although Appellant risks waiving these arguments by failing to describe (with one exception, the "Whataburger incident") with particularity the extraneous offenses to which he refers, we will review his Rule 403 argument as it relates to the incident he has identified on appeal.  *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010).

1. *Standard of Review*

We review the trial court's admission of evidence under an abuse of discretion standard.  *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).  A trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily or unreasonably.  *Id.* at 669 (citing *Montgomery*, 810 S.W.2d at 380).  Therefore, we uphold a trial court's ruling on admissibility if it is within the "zone of reasonable disagreement." *Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021) (quoting *Powell v. State*, 63 S.W.3d 432, 438 (Tex. Crim. App. 2001)).

---

*Cockrell*, 933 S.W.2d at 89).  Further, Rule 38.1(i) requires the appellant's brief to include appropriate citations to authorities.  TEX. R. APP. P. 38.1(i).

## 2. *Preservation of Error: Identifying the Scope of Our Review*

Given Appellant's broad record citation of 149 pages to identify the "unadjudicated" offenses, our first task is to determine to which offenses Appellant is referring. As stated above, from his cited authority, we conclude that Appellant takes issue with the offenses that the State discussed during its closing argument. There are three different offenses. First, Appellant threw a large block at Francis's car, breaking a window. Second, Appellant engaged in reckless driving while Francis was in the car. Third, Appellant and Francis engaged in a domestic dispute outside of a Whataburger restaurant.[8] There was also a fourth extraneous offense not mentioned in the State's closing argument—an arrest for driving while intoxicated (DWI) four days before the murder.

Next, we must determine whether Appellant preserved any alleged error under Rule 403 of the Texas Rules of Evidence, in regard to these three offenses. Appellant's trial counsel objected to the admission of these offenses at trial, but on different grounds. Appellant objected to the breaking of the car window incident on Rule 404(a) and 404(b) grounds. *See* TEX. R. EVID. 404(a), 404(b). He did not object to the reckless driving incident itself but objected to the testifying officer's statements as hearsay. *See generally id.* R. 801–806. Appellant objected to the incident at Whataburger under Rule 403. Appellant's only objections to the DWI were hearsay and that the offense was a misdemeanor. The trial court overruled the objections to the first three incidents and did not rule on the objections to the DWI.

To preserve error for review, the objection at trial must correspond with the issue on appeal. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991). "An

---

[8]We note that Appellant's characterization of all offenses as "unadjudicated" is incorrect. To the first two offenses, Appellant pled no contest to criminal mischief. Only in the Whataburger incident did Francis decline to press charges, and the evidence does not show whether Appellant was convicted of an offense stemming from that incident.

14

objection stating one legal basis may not be used to support a different legal theory on appeal." *Edwards v. State*, 97 S.W.3d 279, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).   Appellant's brief provides cursory analysis for the offenses collectively and does so under *Gigliobianco* and *Montgomery*—cases that analyze admissibility under Rule 403.[9]  *See Gigliobianco*, 210 S.W.3d at 640; *Montgomery*, 810 S.W.2d 372.  However, his objections at trial to the car window incident and the reckless driving incident do not correspond to his issue on appeal.  As to objections made to testimony regarding the DWI arrest, Appellant did not obtain a ruling, nor did the trial court refuse to rule on its admissibility.  *See* Tex. R. App. P.  33.1(a)(2); *Dority v. State*, 631 S.W.3d 779, 786 (Tex. App.—Eastland 2021, no pet.).

However, Appellant's trial counsel stipulated to Appellant's DWI arrest.  And testimony regarding Appellant's DWI arrest by the arresting officer was offered without objection.  As a result, Appellant's objection to DWI testimony was not preserved for appeal.  *See* Tex. R. App. P. 33.1.  Moreover, Appellant is limited on appeal to the contention he makes on appeal: that the trial court abused its discretion in admitting the other unadjudicated offenses under Rule 403.  *Turner*, 805 S.W.2d at 431; *Edwards*, 97 S.W.3d at 287.  And, because Appellant's only objection at trial under Rule 403 for an unadjudicated offense is related to the extraneous-offense evidence of the Whataburger incident, we limit our review to that incident.

---

[9]Appellant's "analysis" consists of single-word conclusions in parenthesis after repeating the *Gigliobianco* factors:

> The 404(b)(2)-evidence fails under the *Gigliobianco*-test because: (1) the inherent probative force of each (line of evidence) along with (2) the State's need for the evidence was nonexistent when placed against (3) any tendency of the evidence to suggest decision on an improper basis (great), (4) any tendency of the evidence to confuse or distract the jury from the main issues (great), (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence (great), and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006).

### 3. *Applicable Law*

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery*, 810 S.W.2d at 376); *see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 392; *Martin*, 570 S.W.3d at 437.

When undertaking a Rule 403 analysis, a trial court must consider several factors (the *Gigliobianco* factors) and balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (citing *Gigliobianco*, 210 S.W.3d at 641–42). These factors guide our analysis.

### 4. *Analysis*

The specific events that comprise the "Whataburger incident" are unclear. The evidence presented at trial does not describe the entire incident, the timeline of the incident, or its outcome in detail. The evidence adduced on the Whataburger

incident consisted of (1) testimony from Chance Doyle Rainer, a Midland Police Officer at the time of the incident, (2) text messages between Appellant and Francis, and (3) Appellant's interview with police after he was taken into custody for the instant offense.

Appellant stated that he took Francis to get food at Whataburger after Francis's shift ended. Appellant stated that, when Appellant did not want to eat as well, Francis became angry and punched him while they were in the drive-thru. Francis then exited the vehicle. In a text to Francis, Appellant claimed that Francis got out while he was pulling forward, but Francis's response suggested he intentionally hit her with his vehicle.

"The first two *Gigliobianco* factors focus on the probative force of and the State's need for the evidence." *Garcia*, 630 S.W.3d at 269. "Probative value" refers to the inherent probative force of an item of evidence—how strongly it serves to make the existence of a fact of consequence more or less probable—along with the proponent's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. The first two factors weigh in favor of admission. The State introduced evidence of the Whataburger incident to establish Francis's prior relationship with Appellant. As evidence of Appellant's prior relationship with Francis, the incident was probative of his state of mind at the time of the offense. *See* CRIM. PROC. art. 38.36 (West 2018). The State also needed the evidence. While other extraneous offenses shed light on Appellant's behavior in his relationship with Francis, only the Whataburger incident appeared to involve direct assaultive conduct against Francis herself. The Whataburger incident had probative value that none of the other "unadjudicated" offenses exhibited.

The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia*, 630 S.W.3d at 269. The third factor, the tendency

17

of the evidence to suggest a decision on an improper basis, weighs in favor of admission. Rather than suggesting an improper decision, evidence of the aggravated assault against Francis provided relevant context on the facts and circumstances surrounding the murder and the previous relationship existing between Francis and Appellant and provided relevant facts and circumstances to show the condition of Appellant's mind at the time of the offense. *See* CRIM. PROC. art. 38.36. Further, the jury charge instructed the jury not to consider any acts or transactions committed by Appellant unless the jury found and believed beyond a reasonable doubt that Appellant committed such actions. The instructions equipped the jury to properly weigh the extraneous offense evidence and minimized the risk of the jury improperly relying on such evidence in reaching its verdict. *See Kersh v. State*, No. 02-22-00088-CR, 2023 WL 3643235 at *5 (Tex. App.—Fort Worth May 25, 2023, pet. ref'd). We presume that the jury followed the trial court's instructions in the charge. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005).

The fourth factor, any tendency to confuse or distract the jury, weighs in favor of admission. "Confusion of the issues alludes to the likelihood that the evidence would confuse the jury or distract them from the case's central issues." *James v. State*, 623 S.W.3d 533, 550 (Tex. App.—Fort Worth 2021, no pet.). Because Appellant pleaded guilty, the central issue at trial was the punishment to be assessed. Because sudden passion was raised, Appellant's state of mind at the time of the murder was also an issue at trial. The discrete focus of trial made it less likely that the extraneous incident distracted the jury from the central issues of the case.

Factor five, the potential for undue weight, weighs in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641. Undue weight considers whether the jury was equipped to evaluate the probative force of the evidence; for example, scientific evidence might mislead a jury if they are not given the tools to evaluate it. *Id.* The

18

Whataburger incident was neither complex nor scientific in nature. The jury was equipped to evaluate the testimony and evidence of the aggravated assault.

The final factor, the potential for the evidence to consume an inordinate amount of time at trial or is merely cumulative, weighs in favor of admission. *See Gigliobianco*, 210 S.W.3d at 641–42. We cannot say that the admission of this offense represented an inefficient use of the jury's time. The time spent on the incident at trial was not short, but we cannot describe it as "inordinate." *Id.* Therefore, the sixth factor weighs in favor of admission.

We have considered the *Gigliobianco* factors and conclude that the factors weigh in favor of the admission of the Whataburger incident. The incident was probative on the issue of sudden passion. The incident did not serve to distract the jury or suggest a decision on an improper basis, and the jury was equipped to evaluate its probative force. The time taken to admit the Whataburger incident was not inordinate. Thus, the trial court did not abuse its discretion in admitting evidence of the Whataburger incident under Rule 403. Appellant's second sub-issue is overruled. Having overruled each of Appellant's sub-issues, we overrule his second issue.

IV. *Any error regarding the State's alleged mishandling of Appellant's cell phone was not preserved*

In Appellant's third issue, he argues that the trial court should have "issued" a mistrial after the State "mishandled" evidence, which violated his due process rights. The State responds that this issue was not preserved for our review. Appellant contends that despite this "lapse in preservation," we should consider this point in the "interest of justice."

1.    *Standard of Review and Applicable Law*

Generally, to preserve a complaint for appellate review, a party must make a contemporaneous objection in the trial court.  *See Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020) (citing TEX. R. APP. P. 33.1(a)(1)).  As noted by the Texas Court of Criminal Appeals, there are two general policies for requiring specific objections: "First, a specific objection is required to inform the trial judge of the basis of the objection and afford him the opportunity to rule on it.  Second, a specific objection is required to afford opposing counsel an opportunity to remove the objection or supply other testimony."  *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) (footnote omitted).  "[O]bjections promote the prevention and correction of errors.  When valid objections are timely made and sustained, the parties may have a lawful trial.  They, and the judicial system, are not burdened by appeal and retrial.  When a party is excused from the requirement of objecting, the results are the opposite."  *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

"All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong."  *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).  Fundamental errors fall into "two relatively small categories of errors: violations of 'rights which are waivable only' and denials of 'absolute systemic requirements.'"  *Saldano*, 70 S.W.3d at 888.  A party is not required to preserve a complaint for the violation of these two categories or rights.  *Marin*, 851 S.W.2d at 279; *see also Burg*, 592 S.W.3d at 449.

A waivable-only right is one that the trial court has an independent duty to implement unless the record reflects that it has been "'plainly, freely, and

20

intelligently' waived at trial." *Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (quoting *Marin*, 851 S.W.2d at 280). Examples of waivable-only rights are the right to the assistance of counsel and the right to a trial by jury. *Saldano*, 70 S.W.3d at 888.

"[A]bsolute requirements and prohibitions," such as personal jurisdiction, subject-matter jurisdiction, and a penal statute's compliance with the Texas constitution's Separation of Powers provision are "systemic" and "essentially independent of the litigants' wishes." *Proenza*, 541 S.W.3d at 792 (quoting *Marin*, 851 S.W.2d at 279); *see Saldano*, 70 S.W.3d at 888. Absolute requirements and prohibitions cannot be forfeited or validly waived. *Proenza*, 541 S.W.3d at 792; *Marin*, 851 S.W.2d at 279.

### 2. *Analysis*

Appellant concedes that his third issue is not preserved. Appellant's trial counsel did not object to, let alone request a mistrial for, the State's alleged mishandling of Appellant's cell phone. Because Appellant did not timely object to the alleged "mishandling" of the cell phone, he has waived his argument on appeal.[10] TEX. R. APP. P. 33.1; *Marin*, 851 S.W.2d at 279.

In his reply brief, Appellant requests that we address the issue notwithstanding his failure to preserve the alleged error because the case "reveal[s] constitutional error." Even nonfundamental error that relates to due process may be waived absent a timely and specific objection. *See Jenkins v. State*, No. 11-19-00272-CR, 2021 WL 3557566 at *5 (Tex. App.—Eastland Aug. 12, 2021, no pet.) (mem. op., not designated for publication); *see also Woodrome v. State*, No. 13-21-00036-CR, 2022

---

[10]Even if Appellant had timely asserted the alleged mishandling of the evidence by the State, it is unclear whether error or mishandling occurred at all. The only incident Appellant asserts to support "mishandling" is that the cell phone was taken out of evidence and given to defense counsel. At trial, Appellant's trial counsel argued that the contents of the cell phone should have been extracted. Appellant raises a separate concern that the State "mishandled" this evidence that is unsupported by the record.

WL 480246 at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 17, 2022, no pet.) (mem. op., not designated for publication) (citing *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002, pet. ref'd)); *Belt v. State*, 127 S.W.3d 277, 282 (Tex. App.—Fort Worth 2004, no pet.) (failure to object specifically on due process grounds waived issue on appeal). We decline to excuse Appellant from the preservation requirements imposed by Texas law. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


September 29, 2023

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.